**WO**                                                                                                              SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

William Mark Isbell,                    )    No. CV 11-0391-PHX-JAT (JFM)
                                        )
        Plaintiff,                   )
                                        )
vs.                                     )    **ORDER**
                                        )
Charles Ryan, et al.,                   )
                                        )
        Defendants.                  )
                                        )

Plaintiff filed William Mark Isbell filed this *pro se* civil rights action against employees of the Arizona Department of Corrections (ADC). (Doc. 1.) Plaintiff's action arises out of the failure to provide him a lacto-vegetarian religious diet, which he claims he needs because he is Asatru. He asserts a violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The remaining Defendants—Charles Ryan, ADC Director; Arizona State Prison Complex (ASPC)-Eyman Warden Trujillo; Senior Chaplain Henderson; ASPC-Eyman Browning Unit Deputy Warden Ramos, Associate Deputy Warden Heet, and Chaplain Miser—move for summary judgment.[1] (Doc. 21.) Plaintiff cross moves for summary judgment. (Doc. 35.)

The Court will grant Defendants' motion in part, deny it in part, and deny Plaintiff's motion.

---

[1] The Court provided Plaintiff notice pursuant to Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998), regarding his obligation to respond. (Doc. 33.)

# I. Legal Standards

## A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. See Fed. R. Civ. P. 56(c). The judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

///

**B.     Free Exercise**

To prevail on a First Amendment, free-exercise-of-religion claim, a plaintiff must show that a defendant burdened the practice of plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). Regulations that impinge on the First Amendment right to free exercise may be upheld only if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) there must be a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives. Id. at 90.

**C.     RLUIPA**

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). This "compelling government interest" and "least restrictive means" test replaced Turner's "legitimate penological interest" test. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. at 995 (citing 42 U.S.C. § 2000cc-3(g)). The Supreme Court has upheld RLUIPA against an Establishment Clause challenge. Cutter v. Wilkinson, 544 U.S. 709 (2005).

The inmate bears the burden of establishing prima facie that RLUIPA has been violated and that his religious exercise has been substantially burdened. Warsoldier, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). The government then bears the burden of proving that the substantial burden on the inmate's religious practice both furthers a

compelling governmental interest and is the least restrictive means of doing so. Id. at 995
(citing 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

## II. Motions for Summary Judgment

### A. Parties' Contentions[2]

#### 1. Facts

Inmates who have declared a religious preference may request accommodations to practice their faith, such as a special diet. (DSOF ¶ 4; PSOF II ¶ 4.) Inmates may change their religious designation by submitting a written request. (DSOF ¶ 5; PSOF II ¶ 5.) Special diets are available to ADC inmates to observe their religious practice. (DSOF ¶ 7; PSOF II ¶ 7.) Inmates can be removed from the restricted diets for non-compliance. (DSOF ¶ 8; PSOF II ¶ 8.)

The parties dispute the ADC procedure regarding religious diets. Defendants assert that the ADC policy and procedure have been developed in an effort to minimize the misuse of religious designation for other than sincere religious practice. (DSOF ¶ 6.) For example, if an inmate has designated a different religion within the past year, additional documentation may be necessary to verify his sincere interest in changing to the newly-declared religion, and if an inmate requests a religious accommodation that is seemingly inconsistent with the practice of his designated religion, prison officials may undertake additional investigation

---

[2]Although this is a fairly simple claim, the briefing in this matter is extensive—and needlessly confusing. Defendants submit their Statement of Facts (Doc. 22 (DSOF I)); and Henderson's declaration, with attachments (id., Ex. A, Henderson Decl.) Plaintiff submits his Statement of Facts (Doc. 36 (PSOF I)) and his declaration, with attachments (Doc. 37, Pl. Decl.) He also submits a separate response to Defendants' motion (Doc. 43) and a Statement of Facts in Opposition (Doc. 44 (PSOF II)), with exhibits. Defendants submit a response to Plaintiff's motion (Doc. 46) and their Statement of Facts (Doc. 47 (DSOF II)), which includes exhibits and objections to Plaintiff's evidence. Defendants also submit their reply. (Doc. 52.) Finally, Plaintiff submits his reply (Doc. 59) and another Statement of Facts (Doc. 60 (PSOF III)), which includes his responses to Defendants' evidentiary objections and his objections to Defendants' evidence in their response.

The Court has reviewed the parties' objections to evidence and, where relevant, has summarized the objections and ruled on them. The remaining objections are overruled or are irrelevant. The Court has relied only on admissible evidence in issuing this Order.

to determine the validity of the request. (Id.)

Plaintiff asserts that ADC requires that the dietary practice must be central to or mandated by the declared religion. (PSOF II ¶ 6.) He claims that Henderson demanded clergy verification of the need for the diet. (Id.; ref. PSOF I ¶ 25.)

According to Defendants, special diets require additional accountability and planning, more preparation manpower, and at times, more expensive ingredient costs. (DSOF ¶ 8, Henderson Decl.) Plaintiff argues that Henderson is not competent to attest to this. (PSOF II ¶ 8.)

Inmates who are unable to demonstrate a religious reason for the request are denied a restricted religious diet. (DSOF ¶ 10.) When an inmate requests a religious diet, the chaplain can review the request in light of the inmate's inconsistent history and behavior, which may include an investigation into such factors as past religious declarations, disciplinary history, and discretionary food purchases that are inconsistent with the requested diet. (Id.) Plaintiff disputes this, arguing that dietary restrictions are to be followed once an inmate has been approved for the religious diet. (Doc. PSOF II ¶ 10.)

ADC asserts that a lacto-vegetarian diet is currently available to inmates who establish a sincerely-held religious reason that is consistent with the religious preference that they have declared. (DSOF ¶ 11.) Defendants assert that lacto-vegetarian refers to the inclusion of dairy products in the diet and that effective August 15, 2011, the ADC Vegetarian Diet will convert to a vegan diet, eliminating dairy products. (Id.)

Plaintiff entered ADC on November 17, 1994, and declared that his religious preference was Christian. (DSOF ¶ 13; PSOF II ¶ 13.) In July 1997, he changed his religious preference to "Identity," and in January 1999, he re-registered as Asatru. (DSOF ¶ 14; PSOF II ¶ 14.) He was released from ADC on December 10, 2000, and on May 24, 2005, reentered ADC to serve new sentences. (DSOF ¶¶ 14-15; PSOF II ¶¶ 14-15.) On October 14, 2005, Plaintiff changed his religious designation to Seventh Day Adventist. (DSOF ¶ 16; PSOF II ¶ 16.) On May 13, 2006, he switched his religious preference to Asatru, and in June 2010, Plaintiff requested a religious diet. (DSOF ¶¶ 16, 18; PSOF II

¶¶ 16, 18.)

Senior Chaplain Henderson asked Plaintiff to provide his religious reason for the request. (DSOF ¶ 19; PSOF II ¶ 19.) In reply, Plaintiff wrote about the history of Asatru as an ancient northern European religion and indicated that because he could not be sure how the meat he received at prison was slaughtered, he should eat the vegetarian diet. (DSOF ¶ 19.) Plaintiff asserts that he explained his personal and religious basis for his dietary request. (PSOF II ¶ 19.)

Defendants assert that "[b]ased upon his knowledge of Asatru, which included ceremonies during which meat was consumed," Henderson asked Plaintiff to provide some printed documentation in support of his request for a vegetarian diet. (DSOF ¶ 20; PSOF II ¶ 20.) Defendants assert that although Plaintiff provided documents, they did not state that a vegetarian diet was consistent with the practice of Asatru. (DSOF ¶ 21.) Plaintiff disputes this and provides a list of the documents submitted. (PSOF II ¶ 21.)

Henderson denied Plaintiff's request for a vegetarian diet, which was affirmed in the grievance process. (DSOF ¶ 21; PSOF II ¶ 21.)

Defendants assert that inmate-store purchases may only be used and consumed by the inmate purchaser and that Plaintiff has consistently purchased meat products from the inmate store; they contend that inconsistent food purchases is a basis for denial of the religious diet. (DSOF ¶¶ 22-24.) Plaintiff asserts that during the period that his request was pending—June 2 to October 7—he purchased chicken flavored ramen noodles and one beef sausage but that he did not eat these items; they were purchased for and eaten by other inmates. (PSOF II ¶ 23.) And he claims that inconsistent food purchases are grounds only for discontinuing a previously approved diet. (PSOF II ¶ 24.)

In his cross-motion, Plaintiff asserts various beliefs of those in the Asatru community, including the interconnectedness of mind, body, and spirit, and contends that because of this connection, many believe that butchering of animals or the method of butchering is vital because if the animal dies in fear or has a weak spirit, the person who consumes the flesh

consumes the fear and weakness.³ (PSOF I ¶¶ 18-19.) Because Plaintiff has no control over how the meat he is fed is processed, he needs to abstain from eating meat. (PSOF II ¶ 21.)

In their response to his motion, Defendants assert that "Asatru practice includes the consumption of meat during certain ceremonies; 'There are no specific dietary requirements of the Asatru religion.'; '[P]ork is considered sacred to the God Freyr, and is generally eaten at the Yule Fest.'" (DSOF II ¶ 25, Linderman Decl. ¶ 32.) Defendants allege that on August 18, 2010, Plaintiff submitted a chapter from <u>Creed of Iron, Wotansvolk Wisdom</u>, entitled "Odic Force." (DSOF II ¶ 18, Linderman Decl., Attach. 1, 2.) According to Defendants, the Odic Force article is part of a book published by the 14 Word Press, "Wotansvolk" or Wotan (an acronym for "Will of the Aryan Nation") and refers to a group of white supremacists. (DSOF II ¶ 19.) Defendants assert that Wotanism is considered a bastardization of Odinism, which is the root of Asatru. (DSOF II ¶ 22, Linderman Decl. ¶ 31.) According to Defendants, it is not the same belief system as Asatru. (DSOF II, Linderman Decl. ¶¶ 29-31, Attach. 3.) Defendants argue that the Odic Force article that Plaintiff submitted on August 18, 2010, to support his claim for a diet based on his purported Asatru beliefs was not related to Asatru and that the article does not mention a vegetarian diet or any diet. (DSOF II ¶ 24, Linderman Decl. ¶ 31, Attach. 1 and 2.)

Plaintiff replies, objecting to Defendants' evidence on various grounds, and he moves to strike portions of Linderman's declaration.⁴ (Doc. 60.)

### 2. Legal Arguments

Defendants argue that they did not burden Plaintiff's religious practice and that they are entitled to qualified immunity because they did not violate a clearly established right. (Doc. 21 at 5.) They contend that Plaintiff failed to articulate a religious reason for his request, that he was consuming meat from the inmate store, and that it is appropriate to deny

---

³Defendants object to these statements on various grounds—conclusory statements of opinion, lack of foundation, and hearsay (Doc. 47 at 2-3); the objections are overruled. The statements are admissible to the extent they explain Plaintiff's own religious beliefs.

⁴The motion to strike is denied.

a special diet if an inmate is not sincere in his religious beliefs. (Id. at 5-7.) They assert that they could have believed that they complied with the law when they required Plaintiff to explain the religious reason for his vegetarian-diet request and denied him the diet when he was unable to, particularly when Plaintiff's history showed that he had frequently switched religions, that he consumed meat from the store, that he was affiliated with a gang and he had a 2009 ADC Inmate Disciplinary Rule violation for heroin use. (Id. at )

Defendants also argue that Ryan and Trujillo did not have the duty to determine eligibility for religious diets and that they cannot be sued on a theory of *respondeat superior*. (Id. at 12.) They assert that furthermore, Ramos, Heet, and Miser, did not have the authority to grant or to deny religious diets. (Id. at 13; DSOF I, Henderson Decl. ¶2.)

In his motion, Plaintiff argues that he has provided evidence of his sincere belief in the need for a vegetarian diet, evidence that ADC has such a diet, and evidence that denial of the diet substantially burdens his religious practice. He makes arguments as to the Turner factors and RLUIPA. (Doc. 35.) As to Defendants' request for qualified immunity, Plaintiff points out that he seeks not only damages but injunctive relief and that he has sued Defendants in their official capacity and well as individual capacity. (Doc. 43 at 15.) Plaintiff does not respond to Defendants' argument regarding Ramos, Heet, and Miser's lack of authority to grant a religious diet. However, he asserts that Miser, Heet, Ramos, and Trujillo and Ryan all had "vested authority" to address the denial of the religious diet. (PSOF I ¶ 33.)

In their response to Plaintiff's motion, Defendants reassert their arguments in their motion. (Doc. 46 at 7-8.) They also claim that the store records show that Plaintiff purchased meat items from the inmate store, that inmates are forbidden from transferring property to others (DSOF II, Linderman Decl. ¶ 25), and that inmates in the Browning Unit live in single cells with metal mesh fronts and do not have the opportunity to transfer items outside their cells (DSOF II, Ex. C, Miser Decl. ¶ 18). Therefore, they assert that Plaintiff cannot meet his burden under RLUIPA to show that denial of the vegetarian diet substantially burdened his religious practice. (Doc. 46 at 9.) Defendants also argue that

damages are not available under RLUIPA and that Plaintiff is not entitled to punitive damages. (Id. at 11-14.)

**C. Analysis**

The Court will grant Defendants' motion in part and deny it in part and deny Plaintiff's motion.

**1. Sincerely Held Belief**

The Court finds that there is a dispute of fact regarding whether Plaintiff's request for a vegetarian diet is grounded in a sincerely held religious belief.

To prevail on a claim under the First Amendment or RLUIPA, an inmate must establish that the religious accommodation he seeks is based on a sincerely held religious belief. Shakur, 514 F.3d at 884-85; Warsoldier, 418 F.3d at 994. Defendants make two arguments as to the sincerely-held belief requirement: that they relied on Plaintiff's failure to provide documentation supporting his request for a vegetarian diet or his failure to articulate a religious basis and that Plaintiff's conduct demonstrate that his beliefs are not sincerely held.

As to the reliance on Plaintiff's failure to articulate a religious reason, Plaintiff has asserted that Asatru beliefs include belief in the interconnectedness of mind, body, and spirit and that because of this connection, many believe that butchering of animals or the method of butchering is vital because if the animal dies in fear or has a weak spirit, the person who consumes the flesh consumes the fear and weakness. Because he does not know the method of butchering the meat served at ADC, Plaintiff must abstain from eating meat. "[The] task is to decide whether the beliefs professed . . . are sincerely held and whether they are, in [Plaintiff's] own scheme of things, religious." United States v. Seeger, 380 U.S. 163, 185 (1965). The Court cannot say as a matter of law that Plaintiff's articulated reason is not an expression of a religious basis for Plaintiff's belief. "[T]the religious fabric of this country is one of a 'vast panoply of beliefs.'" United States v. Ward, 989 F.2d 1015, 1018 (9th Cir. 1992) (quoting United States v. Seeger, 380 U.S. 163, 175 (1965)).

As to Plaintiff's inability to provide written proof of his belief, it is the sincerity of

one's belief rather than its centrality to one's faith or the "correctness" of the belief that is relevant to the free-exercise inquiry. Shakur, 514 F.3d at 884-85. In Jackson v. Mann, the Second Circuit rejected a district court's reliance on a rabbi's determination that an inmate was not Jewish for purposes of a prison's kosher-diet program; the Second Circuit reasoned that whether an inmate's beliefs are entitled to First Amendment protection turns on whether those beliefs are sincerely held, not on an ecclesiastical question whether the inmate is a Jew under Jewish law. 196 F.3d 316, 320-21 (2nd Cir. 1999). The Jackson court reasoned that the prison "erroneously substituted the objective 'accuracy' of [the inmate's] assertion that he is Jewish for the correct test—whether [the inmate's] beliefs are 'sincerely held.'" 196 F.3d at 320. See also Ford v. McGinnis, 352 F.3d 582, 593-94 (2d Cir. 2003) (the role a religious feast played in a prisoner's practice of Islam determined whether there had been a substantial burden to his religious practice, not the testimony of Muslim clerics as to the proper celebration of the feast); Koger v. Bryan, 523 F3d 789, 799 (7th Cir. 2008).

Henderson's statement asking for documentation "[b]ased upon his knowledge of Asatru, which included ceremonies during which meat was consumed," suggests that Henderson substituted the accuracy of Plaintiff's assertion regarding the need for a vegetarian diet for the correct test—the sincerity of Plaintiff's belief. Likewise, Linderman declared that Asatru does not require a vegetarian diet,[5] but the issue is what Plaintiff believes. Sincerity of beliefs does not turn on an inmate's objective knowledge of his religion. See Colvin v. Caruso, 605 F.3d 282, 298 (6th Cir. 2010). As the Supreme Court has stated "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds.*" Id. at 884 (emphasis added) (quoting Hernandez v. Comm. of Internal Revenue, 490 U.S. at 699, 109 (1989)). "The right to the free exercise of religion is . . . the right of a human being to respond to what that person's conscience says is the dictate of God." Ward v. Walsh,1 F.3d 873, 876 (9th

---

[5]The Court notes that consumption of meat in Asatru ceremonies is not inconsistent with Plaintiff's request for a vegetarian diet. Plaintiff explained that he needed the vegetarian diet because he did not know how the animal products served by ADC were slaughtered.

- 10 -

Cir. 1993).

The sincerity of beliefs is a question of fact generally not appropriate for decision at summary judgment. In Patrick v. LeFevre, the Second Circuit reasoned that scrutiny of a prisoner's sincerity is a means of "differentiating between beliefs that are held as a matter of conscience and those that are animated by motives of deceptions and fraud." 745 F.2d 153, 157 (2d Cir. 1984). The court in Patrick emphasized that courts are "singularly ill-equipped to sit in judgement on the verity of an adherent's religious beliefs" and held that summary judgment was inappropriate because the subjective issue of sincerity of belief was a question of fact; "assessing a claimant's sincerity of belief demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination." Id. See also Murphy v. Mo. Dep't of Corrs., 372 F. 3d 979, 983 (8th Cir. 2004) ("Whether or not group worship is a sincerely held religious belief is a factual determination, so we must not quickly dismiss such claims on summary judgment by concluding that those beliefs are not genuine"); EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002) (based on conduct inconsistent with the plaintiff's professed religious beliefs, defendant had raised a triable issue of fact, but the court reasoned that "[c]redibility issues such as the sincerity of [a plaintiff's] religious belief are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court at summary judgment.'"); Reiss v. Stansel, 2011 WL 2111999, * 5 (D. Ariz. May 26, 2011); Schilling v. Crawford, 2007 WL 2790623, at * 16 (D. Nev. Sept. 21, 2007), citing Jackson, 196 F.3d at 320).

In support of their argument that Plaintiff's beliefs are not sincerely held, Defendants also cite to Plaintiff's purchase of meat items, his switching of religions, his gang affiliation, and a disciplinary violation. Plaintiff claims that he did not purchase non-vegetarian food for his personal consumption, that he has renounced his gang affiliation and debriefed, and that he has had only one disciplinary violation since his reincarceration in 2005. (Doc. 43 at 8.) Moreover, his religious preference was Asatru for three years before he requested the

diet. While Plaintiff's conduct can be considered in determining the sincerity of his religious beliefs, Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d at 56, the cited conduct is insufficient to establish insincerity of belief as a matter of law.

The Court finds that Plaintiff professes to have a sincere belief in his need to abstain from eating meat and that he provides sufficient indicia of sincerity—his studies, his knowledge of Asatru, his persistent efforts to obtain a vegetarian diet—to create a triable issue of fact as to the sincerity of his beliefs. Likewise, Defendants point to Plaintiff's purchase of meat items and other conduct they claim is inconsistent with sincerely held beliefs, thus, precluding summary judgment for Plaintiff.

As to Defendants' argument regarding substantial burden, if Plaintiff establishes that his need for a vegetarian diet is a sincerely held religious belief, denial of the diet is a substantial burden to his religious practice. See Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008) ("We have little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise.")

### 2. Qualified Immunity

Defendants seek dismissal of the action based on qualified immunity. But as Plaintiff points out, he is seeking not only damages but injunctive relief. (Doc. 1.) A defendant in a § 1983 action is entitled to qualified immunity from *damages* for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A finding of qualified immunity would not eliminate the claim for injunctive relief. In addition, the qualified-immunity analysis applies to a suit against defendants only in their individual capacity; in suits against officers in their official capacity, qualified immunity is unavailable as a defense. Kentucky v. Graham, 473 U.S. 159, 167 (1985). In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of a governmental entity, of which the defendant official is an agent, was the moving force behind the violation. Hafer v. Melo, 502 U.S. 21, 25 (1991).

Defendants argue that they could have believed it was lawful to require Plaintiff to explain the religious reason for his diet request and to deny the request when he could not. But it appears that Defendants denied the request because Plaintiff could not *document* the need for a religious diet or establish by documentation that his understanding of the dietary requirements of Asatru are "accurate." It was well established at the time of Plaintiff's request that the relevant inquiry is the sincerity of one's belief rather than its centrality to one's faith or the accuracy of the beliefs. Shakur, 514 F.3d at 884-85. As the Ninth circuit has noted "[t]he peculiarity or uniqueness of [an individual's] creed is irrelevant." United States v. Ward, 989 F.2d 1015, 1018 (9th Cir. 1992). Documentation of one's beliefs may not always be available. Defendants are not entitled to qualified immunity.

### 3. Defendants Ryan, Trujillo, Ramos, Heet, and Miser

Defendants argue that Ryan and Trujillo did not have the duty to authorize a religious diet. They argue that Ramos, Heet, and Miser did not have the authority to provide Plaintiff a religious diet, citing to Henderson's declaration. Henderson attests that he had the duty to deny requests not in conformance with policy and to refer recommendations to grant requests to the Central Office Pastoral Activities Administrator. (PSOF I, Henderson Decl. ¶ 2.) Henderson does not claim that his duty was exclusive, and there are no affidavits or declarations from Ryan, Trujillo, Ramos, or Heet regarding their duties and authority. But the evidence shows that Ryan did not review Plaintiff's grievance appeal. (PSOF I, Henderson Decl., Attach. 5, Inmate Grievance Appeal Resp., dated Jan. 2011.) There is no evidence connecting Ryan to the harm or to a policy. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). There is no *respondeat superior* liability under § 1983. Monell v. New York City Department of Social Services, 436 U.S. 658, 691 (1978). Damage claims against Ryan will be dismissed.

Miser attests that he has no recollection of visiting Plaintiff, the logs do not indicate that he did so, and and probably could not have reviewed literature through the mesh front wall of the cell as Plaintiff claims. But most important, he specifically attests that as the Unit Chaplain, he is not authorized to approve religious diets. (DSOF II, Miser Decl. ¶¶ 13-

- 13 -

16.) Plaintiff does not dispute this evidence except to assert that all had the vested authority to address the denial of a religious diet. (PSOF I ¶ 33.) Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Because the evidence demonstrates that Miser lacked authority to provide Plaintiff a religious diet, he cannot be liable for the denial.

The Court will dismiss damage claims against Ryan and Miser and claims for injunctive relief against Miser. The Court will deny the motion as to dismissal of Trujillo, Ramos, and Heet.

### 4. Damages—RLUIPA and Punitive

An official-capacity claim is another way of pleading an action against the entity of which the officer or official is an agent—in this case, the State of Arizona—and absent a waiver of sovereign immunity, the Eleventh Amendment bars such claims. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Supreme Court has held that states did not waive sovereign immunity to suits for money damages under RLUIPA. Sossamon v. Texas, 131 S. Ct. 1651, 1663 (2011). Thus, the official-capacity claim for damages under RLUIPA will be dismissed.

In addition, the Court holds that damages are not available under RLUIPA against Defendants in their individual capacity. The Ninth Circuit has not squarely addressed whether RLUIPA creates a cause of action for damages against individuals. Plaintiff's reliance on Campbell v. Alameida, 295 Fed. App'x 130, 131 (9th Cir. 2009), is misplaced. (Doc. 59 at 10.) Campbell merely affirmed a grant of qualified immunity from damage claims under the First Amendment and RLUIPA; the court never reached the question of the availability of damages under RLUIPA.

The Fourth, Fifth, Seventh, and Eleventh Circuit Courts of Appeals have addressed individual-capacity damages under RLUIPA and held that such damages are not available. Rendelman v. Rouse, 569 F.3d 182, 188-89 (4th Cir. 2009); Sossamon v. Lone Star State of Texas, 560 F.3d 316, 328-29 (5th Cir. 2009); Nelson v. Miller, 570 F. 3d 868, 889 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272 (11th Cir. 2007). The Eleventh Circuit reasoned

that RLUIPA was enacted pursuant to Congress's Spending Clause power, citing Cutter v. Wilkinson, 544 U.S. 709, 715-16 (2005), and that Spending Clause legislation is not legislation in its operation but operates like a contract, see Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981). Individual RLUIPA defendants are not parties to the contract in their individual capacities, and therefore, only the grant recipient may be liable for its violation. See Smith, 502 F.3d at 1273-75. The Fifth Circuit also concluded that RLUIPA was passed pursuant to the Spending Clause and noted that it also followed the same rule for Spending Clause legislation. Sossamon, 560 F.3d at 328-29. Likewise, the Seventh Circuit reasoned that "[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause," and so the court declined to read RLUIPA as allowing damages against defendants in their individual capacities. Nelson, 570 F. 3d at 889.

As previously noted, in Mayweathers, 314 F.3d at 1066-70, the Ninth Circuit held that RLUIPA is constitutional under the Spending Clause. As the Seventh Circuit reasoned

> [a]lthough RLUIPA ostensibly includes Commerce Clause underpinnings as well, see 42 U.S.C. § 2000cc-1(b), there is no evidence in this case that [the] denial of a religious diet 'affect [ed] . . . commerce with foreign nations, among the several States, or with Indian tribes.' Id. Thus, it strikes us as appropriate, at least in this case, to interpret RLUIPA as an exercise of Congress's power under the Spending Clause.

Nelson, 570 F. 3d at 886 (citing Smith, 502 F.3d at 1274 n. 9 (reasoning that RLUIPA should be analyzed as an exercise of Congress's Spending Clause authority when there is no evidence of an effect on interstate or international commerce)); Sossamon, 560 F.3d at 328 n. 34 (same).

Likewise, here, Plaintiff's claims do not appear to implicate the Commerce Clause, and so the Court interprets RLUIPA as a Spending Clause enactment, which operates like a contract with the state, not individual employees of the state. See Pennhurst State Sch. & Hosp., 451 U.S. at 17. For the reasons discussed by the Fourth, Fifth, Seventh, and Eleventh Circuits, the Court will dismiss Plaintiff's individual damage claims under RLUIPA.

The Court will deny as premature Defendants' request to dismiss claims for punitive

damages.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 21) and Plaintiff's Motion for Summary Judgment (Doc. 35).

(2) Defendants' Motion for Summary Judgment (Doc. 21) is **granted in part and denied in part as follows:**

    (a) **granted** as to dismissal of damage claims under RLUIPA, damages claims against Ryan, and all claims against Miser; and

    (b) **denied** in all other respects.

(3) Miser is dismissed.

(4) Plaintiff's Motion for Summary Judgment (Doc. 35) is **denied**.

(5) The remaining claims regarding denial of a vegetarian diet are the claim for injunctive relief under the First Amendment and RLUIPA and claim for damages under the First Amendment.

DATED this 6th day of December, 2011.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge